UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON REID,<br><br>        Plaintiff,<br><br>   v.<br><br>JASON BARBA,<br><br>        Defendant. | Case No. 1:22-cv-00344-HBK (PC)<br><br>ORDER TO RANDOMLY ASSIGN TO A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO PERMIT PLAINTIFF TO PROCEED ON COGNIZABLE CLAIM AND DISMISS REMAINING CLAIMS[1]<br><br>(Doc. Nos. 8, 10)<br><br>14-DAY DEADLINE |

Plaintiff Carlton Reid is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. Plaintiff proceeds on his First Amended Complaint. (Doc. No. 8, "FAC"). As more fully set forth below, the undersigned finds the FAC states a cognizable First Amendment access to courts claim against Defendant Barba as to his state court habeas corpus petition but fails to state any other cognizable claims. Therefore, the undersigned recommends that Plaintiff be allowed to proceed only on his First Amendment access to courts claim as to his state court habeas corpus petition and the remaining claims be dismissed without prejudice.

////

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

**BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

**A. Procedural History**

Plaintiff initiated this action by filing a Complaint under 42 U.S.C. 1983.  (Doc. No. 1). On July 26, 2023, the undersigned screened the Complaint and found that it failed to state a claim. (Doc. No. 7).  Plaintiff timely filed a First Amended Complaint. (Doc. No. 8, "FAC"). On January 3, 2024, the undersigned issued a Screening Order finding the FAC stated a cognizable First Amendment access to courts claim against Defendant Barba as to Plaintiff's state court habeas petition but failed to state any other claim. (Doc. No. 9).  Plaintiff was afforded the option to either (1) voluntarily dismiss the remaining claims not deemed cognizable, or (2) stand on his FAC subject to the undersigned filing a Findings and Recommendation to dismiss the claims deemed not cognizable. (*Id*. at 12-13).  On January 22, 2024, Plaintiff filed a Notice indicating he intends to stand on his FAC.  (Doc. No. 10).

**B. Summary of the FAC**

The events giving rise to Plaintiff's FAC took place at California Substance Abuse Treatment Facility ("SATF") in Corcoran, CA.  (*See generally* Doc. No. 8).  The FAC names as the sole Defendant Correctional Counselor Jason Barba.  (*Id*. at 3).  The FAC consists of 49 pages, of which 31 pages are exhibits.  (*See id*. at 17-48).  The following facts are presumed true at this stage of the proceedings.

On or about July 30, 2020, the Sacramento County Superior Court granted Plaintiff's motion for discovery materials from the Sacramento County District Attorney's Office ("DAO"), in connection with Plaintiff's state habeas corpus petition.  (*Id*. at 4).  The Court ordered in pertinent part:

> It is further ordered that the Department of Corrections and Rehabilitation accept delivery of the discovery materials so sent to defendant at defendant's current place of housing, which at the time of the filing of the instant motion was Substance Abuse Treatment Facility and State Prison, Corcoran, both of the first such sending as well as any future sendings; that the authorities at that prison provide for the indefinite storage of those materials; and that the authorities at that prison, and any other prison to which defendant may be transferred in the future, provide reasonable access to defendant to those materials.

(*Id*. at 12, 18).

On or about July 30, 2020, the DAO sent a USB[2] drive to SATF containing the requested discovery materials. (*Id*. at 4). Plaintiff did not receive the mailing. (*Id*. at 5). Plaintiff instead received another mailing from the DAO on or about September 18, 2020, which contained printed discovery materials, and a letter which referenced the office's earlier attempt to send Plaintiff the USB drive. (*Id*. at 4-5).

In late September 2020, Plaintiff submitted an inmate request form to the litigation office at SATF, inquiring why the USB drive was not delivered to him and why he received no notice of the mail being received or rejected. (*Id*. at 5, 7). On or about October 2, 2020, Defendant Barba responded, "Sac DA did send Flash Drive. They are not allowed. They were notified and copied all documents to paper then mailed you the documents on paper. Which you received." (*Id*. at 7).

Based on Barba's response, Plaintiff inferred that Barba had reviewed the contents of the USB drive and compared it to the paper materials later sent to Plaintiff. (*Id*. at 7-8). On an unspecified date, Plaintiff filed a grievance based on this information, which Defendant Smith denied on December 5, 2020, stating *inter alia* that the SATF mailroom never received a USB drive sent for him. (*Id*.). Plaintiff appealed the denial, and the appeal was approved, finding the initial institutional response insufficient and that the office of grievances would have to issue another response. (*Id*. at 8). On May 19, 2021, the grievance was denied a second time, noting that Barba learned from the DAO that a USB drive was sent to SATF, but the mailroom staff had no record that it was ever received. (*Id*. at 8-9). On May 28, 2021, Plaintiff appealed again and on August 7, 2021, Defendant Moseley denied the appeal. (*Id*. at 9).

In a separate incident, on December 23, 2020, two correctional staff came to Plaintiff's cell with legal mail that was already partly open. (*Id*. at 8). The correctional staff told Plaintiff it was open when they received it. (*Id*.). Plaintiff later filed a grievance regarding this issue. (*Id*.).[3]

In a third incident, on July 8, 2021, Plaintiff learned from two correctional officers that the

---

[2] A Universal Serial Bus ("USB") drive is commonly used for storage, data backup, and to transfer files between devices.

[3] While Plaintiff's original Complaint asserted two First Amendment claims based on the December 23, 2020 legal mail incident, the FAC does not contain any claims arising from this incident.

litigation department may have returned two CDs[4] of discovery materials to the DAO after Plaintiff had reviewed their contents. (*Id*. at 9). Plaintiff sent a request form to the litigation department asking to confirm this information. (*Id*. at 9-10). Defendant Barba responded, "Yes, all disks were sent back to Sac. Co. D.A. Agreement was made to send all disks back after you were given time to review." (*Id*. at 10). On July 27, 2021, Plaintiff sent a request to the litigation department asking them to retrieve the CDs and stating that any agreement made without his involvement regarding the disposition of the discs was improper because the CDs were his property. (*Id*.). On July 30, 2021, Defendant Barba responded that Plaintiff would have to contact the DAO directly to retrieve the CDs because "[a]ll discovery (CD's) have been returned per instructions." (*Id*.). On an unspecified date, Plaintiff filed a grievance regarding the disposition of the CDs. (*Id*.). The office of grievances denied Plaintiff's grievance, and Plaintiff's appeal was denied. (*Id*.).

Plaintiff alleges Defendant Barba's actions during this time prevented Plaintiff from effectively pursuing both his federal and state habeas petitions. (*Id*. at 10-14). In support, Plaintiff states he filed a federal writ for habeas corpus in June 2020. (*Id*.). The USB drive sent by the Sacramento County DA's office contained discovery materials related to issues in Plaintiff's petition, and Plaintiff never received those materials in any form. (*Id*.). Plaintiff sought multiple extensions of time to file materials supporting the claims asserted in his federal petition, but ultimately his petition was denied with leave to amend on May 13, 2021. (*Id*. at 11). Plaintiff's claims his unsuccessful petition is due to "(1) the failure of J. Barba to follow CDCR policy and allow [Plaintiff's] legal mail to be opened in front of [him], (2) at the very least notifying [Plaintiff] of its arrival, and (3) communicating with the District Attorney's Office on [Plaintiff's] behalf without [his] permission or knowledge." (*Id*. at 10).

On January 6, 2022, Plaintiff filed a petition for writ of habeas corpus in state court challenging his conviction "with new and newly presented evidence along with other issues. Some of those issues would have been discovered more than a year prior to that filing absent J.

---

[4] A Compact Disc ("CD") is a molded disc containing digital data.

4

Barba's interference." (*Id*. at 12). Specifically, one of the CDs returned by the SATF litigation department to the Sacramento County DA's office in July 2021 contained materials in support of Plaintiff's chain of custody and tampering claims raised in his state habeas petition. (*Id*. at 13). On March 8, 2022, Plaintiff's state habeas petition was denied due to lack of evidentiary support. (*Id*.).

Based on the facts above, the FAC alleges the following claims against Defendant Barba: (1) First Amendment retaliation, based on Barba's return of the discovery materials to the Sacramento County DA's office; (2) a First Amendment legal mail claim in connection with the opening of Plaintiff's legal mail outside of Plaintiff's presence; and (3) First Amendment and Fourteenth Amendment access to courts claims, based on Barba's actions that interfered with Plaintiff's ability to pursue his habeas petitions. (*Id*. at 14-15)

As relief, Plaintiff seeks injunctions: (1) prohibiting SATF staff from opening Plaintiff's confidential mail outside his presence, (2) prohibiting Defendant Barba from handling Plaintiff's legal mail or communicating with anyone regarding Plaintiff's legal matters, and (3) preventing "the institution" interfering with Plaintiff's efforts to present the evidence in support of his habeas petitions. (*Id*. at 15). Plaintiff also seeks $100,000 in compensatory damages and $250,000 in punitive damages. (*Id*. at 15-16).

**APPLICABLE LAW AND ANALYSIS**

**A. Screening Requirement and Rule 8**

Plaintiff commenced this action while in prison and is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v.*

*McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a *pro se* litigant on how to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

6

As noted above, Plaintiff's Complaint consists of 49 pages, including 31 pages of exhibits. It therefore violates the page limits applicable to prisoner complaints in this District. The Court will nevertheless screened Plaintiff's Complaint.

### B. First Amendment – Interference with Legal Mail

Prisoners have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). A prison may nonetheless regulate mail in ways that impinge on that right if such regulation is reasonably related to legitimate penological interests, such as safety, order, and rehabilitation. *Id.* Prison officials may examine an inmate's mail without infringing his rights, *United States v. Wilson,* 447 F.2d 1, 8 n. 4 (9th Cir. 1971), and inspect non-legal mail for contraband outside the inmate's presence. *Witherow,* 52 F.3d at 265–66 (upholding inspection of outgoing mail).

As for legal mail, "prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) (concluding the protected First Amendment interest extends to civil legal mail). "A prison's pattern and practice of routinely opening inmate legal mail, outside of the inmate's presence, has been found to violate the Constitution." *See Bieregu v. Reno*, 59 F.3d 1445 (3d Cir. 1995) (prison's "pattern and practice" of opening confidential legal mail outside of inmate's presence infringes upon inmate's First Amendment rights and access to the courts); *Muhammad v. Pitcher*, 35 F.3d 1081, 1085 (6th Cir. 1994). However, the Ninth Circuit and other circuits have held that an isolated instance or occasional opening of inmate legal mail, outside of the inmate's presence, does not violate the Constitution. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (prison guard's opening of inmate's legal mail outside of the inmate's presence was, at most, negligence, and did not reach the level of intent necessary for constitutional violation); *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (isolated, single instance of opening incoming confidential legal mail does not support a constitutional claim); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (isolated incident of opening inmate legal mail "without evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access the

7

courts, does not give rise to a constitutional violation").

Liberally construed, the FAC contends that Defendant Barba opened one piece of alleged legal mail—the package containing a USB drive with discovery materials from the Sacramento County District Attorney's Office ("DAO"), in violation of prison regulations and Plaintiff's First Amendment rights. (Doc. No. 8 at 7). The FAC also indicates that "the USB thumbdrive . . . entered the instition [sic] properly marked legal mail."[5] (*Id*. at 11). Whether the package in question was legal mail within the meaning of the First Amendment is not clear. Indeed, there remains disagreement among the Circuits regarding the scope of the definition of legal mail, s*ee Sallier v. Brooks*, 343 F.3d 868, 876–77 (6th Cir. 2003), and particularly whether mail from a state attorney or prosecutor's office is legal mail. *See Powell v. Goslin*, 2021 WL 2652243, at *2 (D. Alaska June 28, 2021) (finding no First Amendment violation where prison officials opened mail from state attorney's office because "correspondence and discovery from an adverse party are not privileged or protected as legal mail"); *but see Muhammad v. Pitcher*, 35 F.3d 1081, 1085 (6th Cir. 1994) (finding policy of treating all mail from state attorney general as ordinary mail unconstitutional); *Jenkins v. Huntley*, 235 Fed. Appx. 374, *2 (7th Cir. 2007) (noting that mail from state attorney's office may be legal mail if properly marked).

Even assuming that Plaintiff's package was legal mail, however, the FAC fails to state a claim because it alleges only a single instance of Defendant Barba opening Plaintiff's mail outside of his presence. As noted above, in the Ninth Circuit a single or isolated instance of a prison official opening an inmate's legal mail, as opposed to a pattern or practice of doing so, does not generally rise the level of a constitutional violation. *See Stevenson*, 877 F.2d at 1441; *see also Linnihan v. Foulk*, 2014 WL 1922785, at *4 (E.D. Cal. May 14, 2014), report and recommendation adopted, 2014 WL 3361976 (E.D. Cal. July 9, 2014). While the FAC references another incident in which Plaintiff's legal mail was partly opened outside of his presence, it alleges only one such instance involving Defendant Barba. Thus, because the FAC does not allege more than an isolated incident involving Defendant Barba opening Plaintiff's mail, and

---

[5] It is unclear how Plaintiff can describe the labeling of the package containing the USB drive, given that he never received it.

1   there are no facts to indicate that Defendant Barba had an improper motive when he opened the
2   package, the FAC fails to state a First Amendment claim based on this incident.

3           **C.  First Amendment Retaliation**

4           It is clear prisoners have a First Amendment right to file a grievance or civil rights
5   complaint against correctional officials. *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009).
6   To state a claim for First Amendment retaliation, a plaintiff must allege five elements: (1) he
7   engaged in protected activity; (2) the state actor took an adverse action against the plaintiff; (3) a
8   causal connection between the adverse action and the protected conduct; (4) the defendant's
9   actions would chill or silence a person of ordinary fitness from protected activities; and (5) the
10  retaliatory action did not advance a legitimate correctional goal. *Chavez v. Robinson*, 12 F.4th
11  978, 1001 (9th Cir. 2021) (quoting *Rhodes*, 408 F.3d at 567–68).  A retaliatory motive may be
12  shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as
13  direct evidence.  *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir.2003); *McCollum v. Ca. Dep't*
14  *of Corr. And Rehab*., 647 F.3d 870, 882 (9th Cir. 2011).  Mere speculation that a defendant acted
15  out of retaliation is not sufficient. *Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir. 2014) (citing
16  cases).

17          The FAC asserts that on July 19, 2021, Plaintiff learned that the litigation office had sent
18  back the CDs containing criminal discovery materials, which were sent from the DAO to Plaintiff
19  for review, contrary to the state court's order directing SATF to retain the materials indefinitely.
20  (Doc. No. 8 at 9-10).  The FAC asserts that Barba "did . . . so after [Plaintiff] filed two 602's on
21  [Barba] in October and December 2020" as indicia of retaliatory motive.  (*Id*. at 13).  Plaintiff
22  states, however, "I have no exact date of when J. Barba sent my discovery evidence back to the
23  District Attorney," (*id*. at 12).   Because there are no facts indicating when Defendant Barba
24  returned the CDs, the Court cannot infer a retaliatory motive based on proximity in time alone.
25  *See Bruce*, 351 F.3d at 1288-89.  Moreover, there are no facts alleged that Barba was aware of the
26  602s.  While the Court finds, as discussed further below, that Defendant Barba interfered with
27  Plaintiff's First Amendment right of access to the courts by returning the discs prematurely, the
28  FAC does not allege any other facts that would support a connection between Barba's actions and

Plaintiff's protected First Amendment conduct.  Plaintiff's mere speculation that Barba returned the discs to retaliate against him because he filed 602s against Barba some seven months earlier is insufficient to state a claim.  *See Wood*, 753 F.3d at 905.

### D. Access to Courts Claim

Inmates have a fundamental constitutional right of access to the courts and prison officials may not actively interfere with an inmate's right to litigate. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009).  Courts have traditionally differentiated between two types of access claims, those involving the right to affirmative assistance, and those involving an inmate's right to litigate without active interference.  *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011).

The right to be free from active interference does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from "erect[ing] barriers that impede the right of access of incarcerated persons." *John L. v. Adams*, 969 F.2d 228, 235 (6th Cir. 1992); *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004) ("The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference").  Thus, aside from their affirmative right to the tools necessary to challenge their sentences or conditions of confinement, prisoners also have a right, protected by the First Amendment to petition and the Fourteenth Amendment right to substantive due process, "to pursue legal redress for claims that have a reasonable basis in law or fact." *Silva*, 658 F.3d at 1102 (citation omitted).  To state a viable claim of active interference, a plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation" by being shut out of court. *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (*citing Lewis*, 518 U.S. at 348, 351); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Phillips*, 588 F.3d at 655.

Here, the FAC contends that Defendant Barba interfered with his First Amendment and Fourteenth Amendment right of access to the courts by: (1) delaying or impeding Plaintiff's receipt of discovery materials sent by the Sacramento County DA's office; and (2) returning CDs of discovery materials to the Sacramento County DA's office contrary to a state court order.

Plaintiff states these actions interfered with his state and federal petitions.

### 1) Return of USB Drive and Replacement with Paper Materials

The FAC asserts that after Defendant Barba rejected the DAO package containing a USB drive, the DAO sent a second package that contained a "large but incomplete portion of [Plaintiff's] discovery . . . in paper form." (Doc. No. 8 at 10-11). However, there is no indication from the DAO letter accompanying the discovery materials, attached to the FAC, that anything contained in the USB drive was omitted in the second discovery packet. (*See id*. at 21). Rather, the letter lists the five items in the packet, and notes that two items that Plaintiff requested (an interview transcript and dashcam video) were never located. (*Id*.). Further, there are no facts supporting the allegation that Defendant Barba was responsible for the incomplete discovery or for any actual injury or prejudice to Plaintiff's litigation of his habeas petitions as a result of any materials from the DAO mailings. Indeed, the FAC does not specify what missing materials would have substantiated the claims in Plaintiff's habeas petition, much less how Barba was responsible for their absence. Without any facts reflecting that Defendant Barba frustrated the prosecution of Plaintiff's state or federal habeas petition, the FAC fails to allege an access to courts claim based on the initial return of the USB drive and substitution of the paper copies.

### 2) Return of CDs Containing Discovery Materials

As to the later return of the CDs containing discovery materials, however, the FAC adequately alleges that Defendant Barba interfered with Plaintiff's access to courts. The state court issued an order indicating that SATF was to provide for the "indefinite storage" of discovery materials sent by the DAO for Plaintiff's use. (*Id*. at 18). Instead, unbeknownst to Plaintiff, he was given only one opportunity to review materials relevant to his habeas petitions before Barba returned them. (*Id*. at 12-13). Unlike with the USB drive, Plaintiff knew what materials were contained in the CDs that were returned. The FAC specifically states that one CD contained evidence supporting Plaintiff's claims alleging "chain of custody issues and tampering of evidence" but that Plaintiff was unable to attach the materials to his petition because Barba returned them prematurely, contrary to the explicit language of the July 30, 2020 court order. (*Id*. at 13). As a result, Plaintiff's asserts that his state petition was denied on March 8, 2022, because

"[petitioner] provides no evidence to support" his claims. (*Id*.). Thus, liberally construed, by returning discovery materials before Plaintiff had an opportunity to use them in his state habeas petition, Defendant Barba caused actual prejudice to Plaintiff's active state habeas proceedings in violation of his First Amendment rights.

Regarding Petitioner's federal petition, the Court takes judicial notice[6] that Petitioner's federal petition remains pending at Case No. 2:20-cv-01596-DJC-DMC. Thus, Petitioner cannot show at this time that he has suffered any injury due to Defendant Barba's action in returning the CDs. Therefore, the FAC fails to state a cognizable First Amendment access to court claim in connection with his federal petition.

## CONCLUSION

For the reasons set forth above, the undersigned finds that Plaintiff states a cognizable First Amendment access to courts claim against Defendant Barba as to his state court habeas corpus petition, but no other claim. The undersigned will therefore recommend Plaintiff be permitted to proceed on the above claim and the remaining claims be dismissed.

Accordingly, it is hereby **ORDERED**:

The Clerk of Court randomly assign this case to a district judge for consideration of these Findings and Recommendations.

It is further **RECOMMENDED**:

1. This action proceed only on Plaintiff's First Amendment access to courts claim against Defendant Barba as to his state court habeas corpus petition.

2. The remaining claims in the FAC be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted.

---

[6] Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts judicially notice other court proceedings "if those proceedings have a direct relation to the matters at issue." *United States ex. Rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations and internal quotation marks omitted); *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011). However, a court may not take judicial notice of findings of facts from another case. *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006).

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   January 23, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE